Case No. 17099.
Jones, J.
Counsel for the city state that the
question raised by the demurrer is whether the tax authorized by the city charter is subject to the limitations of the Smith law, and particularly to the maximum limitation of fifteen mills provided by Section 5649-5b, General Code. The budget commission and the court of appeals decided this question in the affirmative and against the city. The particular item sought to be approved as a part of the city levy is conceded to be outside of the fifteen-mill limitation found in above section, which is a part of what is commonly called the Smith law, and which provides that “in no case shall the combined maximum rate for all taxes levied in any year in any county, city, village, school district, or other taxing district * * * exceed fifteen mills.” It may be conceded that the city had ample authority to issue these bonds, for the quoted section of the city charter authorizing the manner of assessment and issue is substantially similar to the authority granted to municipalities in .that respect by Sections 3820 and 3821, General Code.
The city charter authorizes the commission to provide for the city’s portion of such improvements by the issue of bonds, and further authorizes it to “levy taxes, in addition to all other taxes author *211 ized by law, to pay such bonds,” and the interest thereon. The city now claims;, under that feature of its charter, to have the inherent power to levy taxes for the purposes named, and that because it is a chartered city it is exempt from the limitations of the quoted section of the Smith law.
It is contended that by the adoption of the home-rule provisions found in Sections 3 and 7, Article XVIII of the Constitution of 1912, municipalities adopting a charter have full power of taxation for local purposes and cannot be limited in that respect by legislative action. Various decisions of this court have been cited construing the home-rule provisions above referred to, and stress is iaid upon the fact that these decisions are not reconcilable with any view that would deny a chartered municipality an untrammeled taxing power for local purposes. But it must be remembered that the property taxation features of our present constitution were not directly involved in those cases except in the case of State, ex rel. City of Toledo, v. Cooper, Auditor, 97 Ohio St., 86.
In order to assent to the view contended for by counsel for the city this court would have to hold that there was no virtue in the various provisions of our constitution relating to taxation and the limitations provided therein. Our present constitution contains three separate provisions conferring upon the general assembly the right to restrict or limit the power of taxation. Section 5, Article XII, provides “No tax shall be levied, except in pursuance of law.” Section 6, Article XIII, provides, “The general assembly shall * * * restrict their [cities and villages] power of taxation, assessment. *212 borrowing money, contracting debts and loaning their credit, so as to prevent an abuse of such power.” Section 13, Article XVIII of the Constitution adopted in 1912, provides, “Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes,” etc.
In the instant case a debt has been incurred by the action of the city, whether considered incurred under its charter or under the statute. This debt is evidenced by bonds to pay the obligation of the city for its portion of the cost of street paving, including intersections. While authority had been granted the municipality, it was limited, however, by Section 5649-56, General Code, which provides that “in no case shall the combined maximum rate for all taxes levied in any year * * * exceed fifteen mills.”
Practically the same argument advanced in this case was made by counsel for the city in Toledo v. Cooper, supra, wherein it was decided that chartered municipalities did not have the unrestricted power to levy taxes for local purposes; that such power was limited or restricted by general law; and that such limitations were warranted both by Section 6, Article XIII, adopted in 1851, and by Section 13, Article XVIII of the amendments adopted in 1912. The constitution has laid a restraining hand upon all municipalities, chartered or unchartered. It has specifically retained legislative control over municipalities by restricting their power to levy taxes or to incur debts. As the law now stands, it is within the municipal power to incur these debts for .the municipality’s portion of the cost and expense of a street improvement. But the *213 constitution has definitely provided that levies for the debt so incurred shall not exceed the limitations placed upon the municipalities by the Smith law. The municipal powers, to incur debt, and to levy taxes for its payment, are closely interwoven. The constitution recognizes this by interposing a check upon both. By statute the city is empowered to incur debts in making special assessments. When so incurred they must be incurred in the manner and under the limitations provided by law. Likewise, the city is restricted in its powers to levy taxes, but there also it must bow to the sovereign power of the state by confining its power within the limitations provided by law.

The judgment of the court of appeals is affirmed.

Case No. 17109.
Jones, J.
It is conceded by the demurrer that the city levy was- made for the purpose of paying interest and sinking fund on the bonds in question; that the levy was outside of the ten-mill limitation but within the fifteen-mill limitation; that the net indebtedness of the city was less than two and one-half per cent, of the value of all the property in the city listed and assessed for taxation; and that these bonds were authorized by the unanimous vote of the city commission and their issuance favored by a vote of a majority but less than two-thirds of the voters.
Under the facts conceded, can the city compel the budget commission to approve and certify, as a part of the city tax, an amount sufficient to pay interest and sinking fund? Or, as we conceive it, the question is: Is it necessary to have an approval of the *214 people in compliance with, statute before a city may levy an additional amount for interest and sinking fund above or outside 'of the ten-mill limitation, which it is conceded is being done?
The power of the municipality to issue such bonds under Section 3939, General Code, seems to be ample under the facts stated in the petition. Since the city has alleged itself to be within the limitations of Sections 3940 and 3941, General Code, under the case of Heffner, a Taxpayer, v. Krinn, 98 Ohio St., 1, the city would seem to have power to issue the bonds and to levy the tax were it not for other limitations placed upon taxation found in the Code. In this case the petitioner has pleaded a charter provision whereby such bonds could be issued upon a majority vote of the people voting upon the question. Certainly the charter provision and the vote taken thereon cannot give the chartered city either the power to issue or the power to tax if legislative limitations are enacted by the general assembly restricting either of those powers. Whatever claim has been made in that respect has been definitely denied by the reported cases of State, ex rel. City of Dayton, v. Bish, Auditor, herewith decided, and City of Toledo v. Cooper, Auditor, 97 Ohio St., 86.
The provisions of our present constitution, providing that “no tax shall be levied, except in pursuance of law,” and that “laws may be passed to limit the power of municipalities to levy taxes and incur debts,” have been construed, in the cases named, and these provisions of the constitution are just as effective in limiting the power to incur debts as in limiting the power to levy taxes.
*215 We are here not only concerned with the general powers of municipalities relating to the issue of bonds, but with their power to levy taxes for their payment. This is a case wherein the city seeks to compel the budget commission, under the provisions of the Smith law, to approve and certify to the county auditor a tax levy outside of the ten-mill limitation found in the Smith law. In respect to that feature of the case we are relegated to the latter law for the purpose of ascertaining not only the city’s right to levy this tax but its right to compel the budget commission to approve it. This is an action in mandamus and the city is required to show the violation of some statutory duty on the part of the budget commission.
In recent years there have developed recurrent contests, evidenced by legislation, between the forces demanding greater leeway for municipal expenditures and those favoring greater retrenchment and a limitation of taxation. This situation has resulted in the adoption of a legislative hodge-podge affecting the municipal authority to incur debts and to levy taxes for their payment. The rising values resulting from the recent war have made the financial situation of municipalities more acute, and, failing to obtain legislative action, appeal is made to the courts for relief. This court, no less than the municipalities of the state, must be governed by the provisions of our present constitution, which, in matters of taxation, have subjected the municipalities of this state to the absolute control of the general assembly. If the legislature has provided that an appeal must be made to the electorate before the *216 municipal authorities can levy local taxes outside of the ten-mill limitation, then the municipality must submit that appeal to the people.
Were it not for Section 3953, General Code, there would be no question that the levy in question could not be made, except by a vote of the electorate. That section is found not in the chapter relating to the levying of taxes, but in the chapter relating to the borrowing of money. Section 3953, General Code, provides that the council shall levy “a tax in addition to all levies authorized by law” sufficient to pay interest and sinking fund on the bonds authorized by council. If this section stood alone, and no other limitation thereon had been provided, it might be urged that authority to issue bonds and levy taxes was ample; but the section quoted must be read in connection with other sections of the code which provide specifically how and to what extent these local levies must be made. These limitations are found in Sections 5649-2 to 5649-5&, inclusive, commonly called the Smith law, and since this law has been embodied in a scheme of legislation relating to taxation these limitations can not be ignored, It must be remembered, as stated above, that this is a matter of taxation wherein not only the municipal power to levy 'taxes is under consideration, but where the authority of the budget commission is involved.
Section 5649-1, General Code, provides that “In any taxing district, the taxing authority shall, within the limitations now prescribed by law, levy a tax sufficient to provide for sinking fund and interest purposes for all bonds issued by any political subdivision.” This is a grant of power for the levy *217 of municipal taxes for the purposes named, “within the limitations now prescribed by law.” What are the limitations now prescribed by law? These will be found in the following sections of the code relating to the limitations of tax levies and their apportionment among the political subdivisions by the budget commissions.
Section 5649-2, General Code, provides that “Except as otherwise provided in Section 5649-4 and Section 5649-5 of the General Code, the aggregate amount of taxes that may be levied on the taxable property in any * * * city * * shall not in any one year exceed ten mills on each dollar of the tax valuation of the taxable property of such * * * city * * * and such levies in addition thereto for sinking fund and interest purposes as may be necessary to provide for any indebtedness heretofore incurred or any indebtedness that may hereafter be incurred by a vote of the people.”
In the construction of Section 5649-2, General Code, some confusion arises as to what is meant by additional levies for sinking fund and interest purposes for an indebtedness “incurred by a vote of the people.” That statute authorizes a levy of ten mills plus an additional levy for sinking fund and interest on a voted indebtedness. It is conceded that here there was no debt incurred by a statutory “vote of the people” taken upon the issue of these bonds. If no such vote was had, the “aggregate amount of taxes that may be levied” shall not exceed ten mills. (Section 5649-2.) This issue did not obtain a two-thirds majority as required by statute, but simply a majority as required by its local charter.
*218 The constitution makes no distinction between chartered and unehartered cities as to their power of incurring indebtedness or levying taxes. And the legislature has made no distinction in placing its limitations upon them; they apply to all municipalities. If we seek elsewhere for the necessity of requiring a vote of the people in incurring a municipal indebtedness by the issue of bonds we are naturally relegated to Section 3942, General Code, wherein a vote of the people may be had under the authority of that section. Section 3939, General Code, grants general powers to a municipality to issue bonds. Section 3942, General Code, provides that in addition to the authority granted in the former section the council may issue and sell bonds (for the purposes set forth in Section 3939, General Code), “upon obtaining the approval of the electors of the corporation.” The sections immediately following provide for the vote. No doubt the adoption of this section by the legislature was for the purpose of granting authority to the municipal council to obtain a vote upon bond issues, and in that manner escape the ten-mill tax limitation provided for in Section 5649-2, General Code. Section 3942, and Section 5649-2, General Code, were both adopted at the same session of the general assembly; but Section 3942, providing for the issue of bonds upon a vote of the people, was passed May 15, 1911, while Section 5649-2 was passed May 31, •1911. This would indicate that when the latter section was passed the general assembly had in view the vote of the people taken under authority of Section 3942, which had been adopted sixteen days before. It would therefore follow that the only possible vote of the people *219 that could be had within the purview of Section 5649-2 was the vote of the people taken under Section 3942 et seq., General Code, which required two-thirds of the voters voting at such election upon the question of issuing bonds before the bonds could be issued. (Section 3947, General Code.) These bonds did not receive a majority of two-thirds of the voters. Therefore interest and sinking fund thereon were not exempt from the control of the budget commissioners and they could not be required to approve and certify to the county auditor the item of $16,-056.47, although this levy was outside of the ten-mill limitation but within the fifteen-mill limitation.
The court of appeals erred in not sustaining the demurrer. The petition should have been dismissed. The judgment of the court of appeals is reversed and judgment rendered in favor of the plaintiffs in error.

Judgment affirmed in Cause No. 17099.

Judgment reversed and judgment for plaintiffs in error in Cause No. 17109.

Marshall, C. J., Johnson, Hough, Robinson and Matthias, JJ., concur.
Wanamaker, J., concurs in the judgment.